# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**ANTHONY Q. KEEL,**

      **Petitioner,**

**v.**                               **Case No.  4:15cv558-RH/CAS**

**JULIE L. JONES, Secretary,
Department of Corrections,[1]**

      **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On, November 16, 2015, Petitioner, Anthony Q. Keel, a prisoner in the custody of the Florida Department of Corrections, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with accompanying memorandum.  ECF Nos. 1, 2.  Petitioner also filed a Notice of Supplemental Authority on February 12, 2016.  ECF No. 7.

---

[1] Petitioner Keel named Pamela Bondi, Florida's Attorney General, as Respondent in this case.  *See* ECF No. 1 at 1.  Petitioner is in the custody of the Florida Department of Corrections.  Accordingly, Julie L. Jones, Secretary of the Florida Department of Corrections, shall be substituted as the sole respondent.  *See* 28 U.S.C. § 2242 (providing that an application for a writ of habeas corpus shall allege the name of the person who has custody over him); Rule 2, Rules Governing Section 2254 Cases in the United States District Courts (providing that if the person is in the custody under a state court judgment, the petition must name as respondent the state officer who has custody).

Respondent filed a motion for more definite statement on June 15, 2016, seeking clarification regarding which circuit court cases were the subject of the petition.  ECF No. 12.  Petitioner responded to the motion, explaining that circuit court case numbers 2008-CF-3890, 2008-CF-3894, 2008-CF-3945, 2008-CF-4506, and 2009-CF-124 were consolidated into Circuit Court case number 2008-3890.  ECF No. 14.  Respondent filed an answer to the petition with exhibits on September 13, 2016.  ECF No. 18.  No reply was filed, although Petitioner was given leave to do so.  *See* ECF No. 21.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by fourth amended information filed in the

Circuit Court of the Second Judicial Circuit, Leon County, Florida, on April

4, 2011, with the following offenses:

> **Count 1**: Racketeering between October 13, 2007, and August 26, 2008, with Korey Cole
>
> **Count 2**: Conspiracy to Engage in Racketeering Activity with Korey Cole between October 13, 2007, and August 26, 2008
>
> **Count 3**: Kidnapping to Inflict Bodily Harm or Terrorize Ronald L. Cull with a Weapon, a BB gun, on October 13, 2007
>
> **Count 4**: Armed Robbery with a Deadly Weapon, a firearm, of Ronald L. Cull and Harvey's Supermarket on October 13, 2007
>
> **Count 5**: Aggravated Battery with a Deadly Weapon, a firearm, upon Ronald L. Cull on October 13, 2007
>
> **Count 6**: Kidnapping to Inflict Bodily Harm or Terrorize Susan Self with a Weapon, a BB gun, on April 3, 2008
>
> **Count 7**: Kidnapping to Inflict Bodily Harm or Terrorize Ronald L. Cull with a Weapon, a BB gun, on April 3, 2008
>
> **Count 8**: Attempted Armed Robbery with a Deadly Weapon of Ronald Cull and Harvey's Supermarket on April 3, 2008
>
> **Count 9**: Kidnapping to Facilitate a Felony with a Weapon, a BB gun, of Maggie Richardson on June 25, 2008
>
> **Count 10**: Kidnapping to Facilitate a Felony with a Weapon, a BB gun, of Nicole Arnett on June 25, 2008
>
> **Count 11**: Armed Robbery with a Deadly Weapon of Nicole Arnett and Family Dollar on June 25, 2008
>
> **Count 12**: Kidnapping to Facilitate a Felony with a Firearm of Terry McKeever on August 4, 2008
>
> **Count 13**: Armed Robbery with a Firearm of Terry McKeever and Dollar General on August 4, 2008

**Count 14**: Kidnapping to Facilitate a Felony with a Weapon, a BB gun, of Caroline Miles on August 25, 2008

**Count 15**: Kidnapping to Facilitate a Felony with a Weapon, a BB gun, of Hellon Ford on August 25, 2008

**Count 16**: Armed Robbery with a Deadly Weapon of Caroline Miles, Hellon Ford, and Dollar General on August 25, 2008

Ex. A at 22-25.[2]

On January 25, 2011, prior to trial, Petitioner's counsel filed a motion to suppress evidence and statements obtained by law enforcement after Petitioner's vehicle was stopped on August 26, 2008, and he was subsequently arrested. Ex. A at 101. The motion alleged that the vehicle was occupied by Petitioner, as driver, and Cory Carrol and Korey Cole as passengers. *Id.* The motion alleged that a search of the vehicle revealed incriminating items and that all the occupants made incriminating statements when interviewed by law enforcement. Ex. A at 107. Petitioner contended that the stop of the vehicle was unlawful because it was not based on a traffic violation or any reasonable well-founded suspicion of criminal activity, but only on a hunch of the officer after a BOLO notice regarding a possible prowler. *Id.* at 106-07. The parties submitted stipulated facts to the trial court concerning the motion to suppress. Ex. A

---

[2] Citations to the state court record, "Ex. –," refer to exhibits A through Z submitted in conjunction with Respondent's answer. *See* ECF No. 18.

at 118.  The State filed a motion to strike because an identical motion,

based on the same stop, was filed and denied in an earlier case.  Ex.  A at

112.  The trial court granted the motion to strike on that ground, but also

indicated that even if the earlier ruling had not been made, the court would

have denied the motion to suppress based on the facts in the record and

the evidence presented at an evidentiary hearing in the earlier case, which

the trial court considered.[3]  Ex. G-1 at 232-33.

Jury trial was held on April 6-7, 2011.  Exs. C, D, E, and F.  Petitioner

was found guilty as charged on Counts 1 through 11 and 14 through 16.

Ex. B at 293-302.  He was found guilty of the lesser included offense of

kidnapping with a weapon on Count 12 and armed robbery with a deadly

weapon on Count 13.  *Id.*  Petitioner was sentenced to 15 years in prison

on Counts 1, 2, 5, and 8.  Ex. B at 306-316; Ex. G at 372-376.  He was

sentenced to 30 years in prison on Counts 3, 4, 6, 7, 12, and 13.  *Id.*  He

received life in prison on Counts 9, 10, 11, 14, 15, and 16.  He was given

228 days credit for time served, with some sentences running

consecutively and some running concurrently.[4]  *Id.*

---

[3] The motion to suppress is discussed at 14 through 18, *infra*.

[4] Sentences on Counts 1 and 2 are concurrent, with Count 3 consecutive to that
sentence; sentence for Count 4 is concurrent to sentence for Count 3; sentence for
Count 5 is concurrent to sentences for Counts 3 and 4; sentence for Count 6 is
consecutive to sentences for Counts 1 through 5; sentence for Count 7 is concurrent to

Petitioner appealed to the state First District Court of Appeal, Ex. I, which affirmed in part and reversed in part with opinion on August 15, 2012.  Ex. L.  Petitioner raised three claims on appeal: (1) whether the trial court erred by striking the motion to suppress based on collateral estoppel; (2) whether the trial court erred by denying the motion to suppress on the grounds that the stop of Petitioner's vehicle was not based on articulable suspicion of a crime; and (3) denial of the motion to correct sentencing error filed under Florida Rule of Criminal Procedure 3.800(b)(2).  Ex. I.  Petitioner's convictions were affirmed without discussion, but the court reversed the imposition of a fine and statutory surcharge and remanded the sentences for correction.  Ex. L.  The mandate was issued on October 10, 2012.  Ex. O.  *See* <u>Keel v. State</u>, 134 So. 3d 1007 (Fla. 1st DCA 2012) (mem).

On August 5, 2013, Petitioner filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), alleging a conflict between the sentences and the scoresheet.  Ex. P at 1.  The

---

sentence for Count 6; sentence for Count 8 is concurrent to sentences for Counts 6 and 7; Sentence for Count 9 is consecutive to sentences for Counts 1 through 8; sentence for Count 10 is concurrent to sentence for Count 9; sentence for Count 11 is concurrent to sentences for Counts 9 and 10; sentence for Count 12 is consecutive to sentences for Counts 1 through 11; sentence for Count 13 is concurrent to sentence for Count 12; sentence for Count 14 is consecutive to sentences for Counts 1 through 13; sentence for Count 15 is concurrent to sentence for Count 14; and sentence for Count 16 is concurrent to sentences for Counts 14 and 15.  Ex. B at 314.

motion was denied, Ex. P at 5, and the First District Court of Appeal affirmed per curiam without opinion.  Ex. Q.  The mandate was issued on April 1, 2014.  Ex. R.  *See* Keel v. State, 134 So. 3d 455 (Fla. 1st DCA 2014) (table).

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on March 16, 2014.[5]  Ex. S at 1-15.  A hearing was held on September 30, 2014, at which Petitioner and his trial counsel testified.  Ex. S at 20-21, 29-81.  The motion was denied by order entered on October 30, 2014.  Ex. S at 22-26.  Petitioner appealed the denial of one ground: whether trial counsel rendered ineffective assistance by failing to properly file and argue a motion to suppress based on an illegal arrest.  Ex. T.  The First District Court of Appeal affirmed per curiam without opinion.  Ex. W.  The mandate was issued on September 21, 2015.  Ex. Z.  *See* Keel v. State, 173 So. 3d 890 (Fla. 1st DCA 2015) (table).

Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court on November 16, 2015, raising one ground for relief:

---

[5] The claims raised in the Rule 3.850 motion were: (1) ineffective assistance of trial counsel (IAC) for failing to properly file and argue a motion to suppress based on an illegal arrest; (2) IAC in failing to explain all factors pertaining to Petitioner's right to testify; and (3) IAC in failing to discover and advise Petitioner of the factors bearing on his waiver of the right to present evidence relevant to sentencing.  Ex. S at 3-13.

Trial counsel rendered ineffective assistance in violation of the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution due to counsel's failure to properly file and argue a motion to suppress based on Petitioner's illegal arrest; and the trial court erred in denying the motion to suppress.  ECF No. 1 at 5.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts." Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a
> complete bar on federal-court relitigation of claims already
> rejected in state proceedings. . . . It preserves authority to
> issue the writ in cases where there is no possibility fairminded
> jurists could disagree that the state court's decision conflicts
> with this Court's precedents. It goes no further. Section
> 2254(d) reflects the view that habeas corpus is a "guard against
> extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal.
> Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J.,
> concurring in judgment). As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted). The federal court employs a " 'highly

deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.' " Pinholster, 563

U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

      With certain limited exceptions, "[b]efore a federal court may grant

habeas relief to a state prisoner, the prisoner must exhaust his remedies in

state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C.

§ 2254(b). The Petitioner must have apprised the state court of the federal

constitutional claim, not just the underlying facts of the claim or a

"somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732,

735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).

In order for remedies to be exhausted, "the petitioner must have given the

state courts a 'meaningful opportunity' to address his federal claim."

Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015)

(quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).

Petitioner must "fairly present" his claim in each appropriate state court in

order to alert the state courts to the federal nature of the claim. Duncan v.

Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275

(1971); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

      This Court's review "is limited to the record that was before the state

court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181.

The state court's factual findings are entitled to a presumption of

correctness and to rebut that presumption, the Petitioner must show by

clear and convincing evidence that the state court determinations are not

fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is

not the province of a federal habeas court to reexamine state-court

determinations on state-law questions" and "[i]n conducting habeas review,

a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502

U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222

(2011) ("[W]e have long recognized that 'a "mere error of state law" is not a

denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21

(1982))).

For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct.  *See*

Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at

690).

To demonstrate prejudice under Strickland, a defendant "must show

that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  466 U.S*.* at

694.  "A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question

'is not whether a federal court believes the state court's determination'

under the Strickland standard 'was incorrect but whether that determination

was unreasonable—a substantially higher threshold.' "  Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550

U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general

standard, a state court has even more latitude to reasonably determine that

a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123.

It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*  Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment.  Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs.  Strickland, 466 U.S. at 697.

### Ground 1: Motion to Suppress

Petitioner contends in a two-part claim that his trial counsel rendered ineffective assistance in violation of the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution due to counsel's failure to file and argue a motion to suppress based on Petitioner's illegal arrest in addition to the claim of an illegal stop that was contained in the motion filed by counsel.  ECF NO. 1 at 5.  This claim was raised in his Rule 3.850 motion in the trial court.  Ex. S. at 3.  He also contends in his petition that the trial court erred in denying the motion to suppress that was filed by counsel.  *Id.*  This claim was raised on direct appeal from Petitioner's convictions and sentence.  Ex. I.

## A.  Ineffective assistance of counsel regarding the motion to suppress

Petitioner first argues that the stop of Petitioner's vehicle was not supported by a traffic infraction or other reasonable, well-founded suspicion of a crime and that his arrest after the stop was not based on probable

cause.  He contends that in addition to challenging the stop of his car, trial counsel should have argued in the motion to suppress that the arrest was illegal and all evidence and statements revealed after the stop and arrest should have been suppressed.  ECF No. 2 at 3.  He argues that if trial counsel had included the claim that the arrest was illegal in the motion to suppress filed before trial, incriminating evidence would have been suppressed and the result of the proceeding would have been different. ECF No. 2 at 35.

### 1.  The motion to suppress filed in this case.

On January 25, 2011, prior to trial in this group of consolidated cases, Petitioner's counsel filed a motion to suppress evidence and statements obtained by law enforcement after Petitioner's vehicle was stopped on August 26, 2008.  Ex. A at 101. The motion alleged that the vehicle was occupied by Petitioner, as driver, and Cory Carrol and Korey Cole as passengers.  *Id.*  The motion alleged that a search of the vehicle revealed a black ski mask, black hooded sweatshirt, duct tape, a 9mm handgun, cotton gloves, a black homemade mask, and a BB gun.  DNA swabs were also taken from each occupant.  *Id.*  The motion alleged that all the occupants made incriminating statements when interviewed by law enforcement.  Ex. A at 107.  The motion cited case law for the principle that

for the detention or seizure of a person, law enforcement must have a reasonable, well-founded suspicion based on articulable facts that criminal activity had occurred, was occurring, or about to occur. *Id.* Even though the motion cited case law concerning detention and seizure, Petitioner's main contention in the motion to suppress was that the stop of the vehicle was unlawful because it was not based on a traffic violation or any reasonable well-founded suspicion of criminal activity, but only on a hunch of the officer after a BOLO dispatch by law enforcement regarding a prowler. *Id.* at 106-07. The parties submitted a statement of stipulated facts to the trial court concerning the motion to suppress. Ex. A at 118.

According to the stipulated facts, on August 26, 2008, at approximately 11:50 p.m., the Wakulla County Sheriff's Office received a call regarding an attempted home invasion in the Wakulla Gardens neighborhood. *Id.* The stipulation stated that no information was relayed by the victim about the description of the suspects. The Wakulla Gardens neighborhood is in a rural area with little pedestrian traffic and has only two roads serving as ingress and egress. *Id.* Wakulla County Deputy Jeremy Johnston arrived at the neighborhood less than one minute after the dispatch and saw no pedestrians or vehicles coming or going as he approached the main entrance to the neighborhood, but he then noted a

black vehicle with tinted windows pulling out from the subdivision onto the main road. *Id.* at 119. He called a BOLO over the radio and Detective Robert Giddens saw the vehicle noted by Johnston. Giddens followed the vehicle a short distance then stopped it. *Id.* Giddens saw no traffic infraction or any type of erratic driving. Nor had he seen any furtive movements within the vehicle or other suspicious behavior. A search of the vehicle revealed a ski mask, firearm, and other inculpatory evidence after Petitioner and his passengers were removed from the vehicle. They were all subsequently arrested and interrogated, during which all three confessed to the attempted home invasion robbery and to 21 other armed robberies in Leon County. Ex. A at 119. Search warrants were obtained to search their homes.

The State filed a motion to strike the motion to suppress on the basis of collateral estoppel because the identical issue challenging the stop of the vehicle, based on the same facts, had been litigated and denied in an earlier case in which Petitioner was the defendant. Ex. A at 112. The State further alleged that even if the claim was not estopped, the State did

not intend to introduce into evidence at trial any of Petitioner's statements or evidence obtained from the search of the vehicle.[6]  *Id.* at 113.

A hearing on the motion to suppress was held at which Petitioner agreed to the stipulated facts and defense counsel provided legal argument.  Ex. G.  The trial court noted that in addition to the stipulated statement of facts, the court would also take notice of the transcript of testimony at the earlier motion to suppress evidentiary hearing on the identical motion.[7]  Ex. G at 359.  At the conclusion of the hearing in the

---

[6] Whether the search was consensual or proper was not an issue in the motion to suppress.  Nor is it an issue in this proceeding.

[7] The transcript of the evidentiary hearing held on June 11, 2009, on Petitioner's identical motion to suppress based on the same stop of Petitioner's vehicle and ruled on by a different judge, shows that Deputy Jeremy Johnston and Detective Robert Giddens testified generally consistent with the stipulated facts presented in this case.  In addition, Deputy Johnston testified that the person trying to gain entrance to the home by force was wearing all black, Ex. A at 143; Petitioner's car was coming out of the subdivision on the only road into or out of the subdivision, *Id.* at 143, 147; the car began moving very slowly before turning on the headlights, *Id.* at 146-47; the homeowner gave a description of the suspect as a black male wearing a mask and hoodie, Ex. A at 150; the officer saw footprints leaving the area of the house leading to where he first saw the black car, *Id.* at 152; the homeowner called 911 immediately after the suspect left the scene, *Id.* at 168; Wakulla County Detective Robert Giddens testified he heard the BOLO regarding the black car and almost immediately spotted the car, *Id.* at 174; Deputy Johnston was relaying information to him about the crime, *Id.* at 175; Giddens did not know if the occupants were involved in crime but they could have been witnesses, *Id.* at 178; when he stopped the car, the driver did not roll down the window, *Id.*; the officer had the occupants step out and when they did he observed a black ski mask in the car, *Id.* at 179; Sergeant Eddie Wester testified he arrived after the car was stopped, *Id.* at 191; in obtaining identification he observed a black mask with eyeholes cut out, *Id.* at 192; the occupants were sweating profusely, *Id.*; Petitioner told the officers he was dropping off someone but could not give an address, *Id.*; the occupants then said they were looking for somewhere to play basketball, *Id.*; the stop occurred sometime around midnight, *Id.* at 142.

present case, the trial court granted the State's motion to strike the January

25, 2011, motion to suppress, stating:

> I have reviewed the motion to suppress and the authority that Mr. Collins [defense counsel] gave me this morning, as well as some additional authority.  I have reviewed the response to the Defendant's motion to suppress and motion to strike that was filed by the State, as well as all of the attachments, the facts that were stipulated to by the parties.
>
> And now I've had the chance to read the entire transcript of the motion to suppress hearing that was held before Judge Sauls on June the 11th of 2009.  I have considered the stipulated facts and everything in that transcript.
>
> At this point I'm going to grant the motion to strike, because the issues presented in the motion to suppress here were previously litigated before Judge Sauls.  However, having had an opportunity to review the entire record of that proceeding and the stipulated facts, had I not granted the motion to strike, had it not been previously litigated before Judge Sauls, I would have denied the motion to suppress.

Ex. G-1 at 232-33.

## 2.  The motion to suppress decided in the earlier case.

The earlier motion to suppress relied on by the trial court was filed on

April 15, 2009, in three earlier cases involving Petitioner and his

codefendants Korey Cole and Cory Carroll.  In that earlier identical motion,

Petitioner moved to suppress based on the same stop of Petitioner's

vehicle and the same search.  Ex. A at 128.  In that earlier case, the motion

was heard by a different judge at an evidentiary hearing on June 11, 2009,

at which Petitioner was present with counsel.[8]  Ex. A at 133-200; Ex. B at 201-08. The motion to suppress in the earlier case was denied, with the court finding that there was reasonable or founded suspicion, more than a hunch, based on a factual foundation in the circumstances observed by law enforcement to believe the occupants of the vehicle might have been involved in criminal activity.[9]  Ex. B at 207.

On direct appeal from Petitioner's convictions and sentences in the present case, in which Petitioner claimed trial court error in striking and denying the motion to suppress, Ex. I, the First District Court of Appeal affirmed the convictions and sentences.  Ex. L.  In doing so, the district court cited, as its rationale, Keel v. State, 134 So. 3d 1005 (Fla. 1st DCA 2012) (case number 1D10-5802), in which the court affirmed Petitioner's conviction and sentence in the same case in which his earlier, identical motion to suppress had been filed and denied.[10]  *See* Ex. A at 128.

---

[8] The court held a combined evidentiary hearing involving case numbers 2008-349 (Keel), 2008-350 (Cole), and 2008-351 (Carroll).  *See* Ex. A at 134-35.

[9] *See* note 7, *supra*, for discussion of evidence in June 11, 2009, hearing.

[10] The appeals from both this case and the earlier case in which the motion to suppress was denied and affirmed on appeal were consolidated in the First District Court of Appeal "for travel."  *See* Docket, First District Court of Appeal found at http://jweb.flcourts.org/pls/ds/ds_docket.  Petitioner's appeals in the consolidated cases were affirmed in Keel v. State, 134 So. 3d 1007 (Fla. 1st DCA 2012) (mem.) (1D11-1113); Keel v. State, 134 So. 3d 1007 (Fla. 1st DCA 2012) (mem.) (1D11-2632); Keel v. State, 134 So. 3d 1008 (Fla. 1st DCA 2012) (mem.) (1D11-2633); and Keel v. State, 134 So. 3d 1005 (Fla. 1st DCA 2012) (mem.) (1D10-5802). The decisions were all issued on the same date, August 15, 2012.

### 3. Petitioner's claim of ineffective assistance of counsel.

Petitioner contends in this ground that his trial counsel rendered ineffective assistance by challenging only the "stop" of Petitioner's vehicle without also challenging the "arrest" that followed the stop.  He argues here that trial counsel should have contended there was no probable cause for Petitioner's arrest because Detective Giddens admitted he saw no traffic infraction when he stopped the vehicle, and that once the pat-down of the occupants of the vehicle was completed without disclosure of any threat to the officer, the handcuffs should have been removed and no arrest effected.  ECF No. 2 at 34.  He further argues that if counsel in this case had moved to suppress the "arrest," it would not have been the same motion litigated in the earlier case and would not have resulted in the motion being stricken based on collateral estoppel.  *Id.* at 35.

To support his claim, Petitioner cites London v. State, 540 So. 2d 211 (Fla. 2d DCA 1989), which he also relied on in the trial court in his motion for post-conviction relief.  ECF No. 2 at 35; Ex. S at 7.  In London, the arrest occurred after a BOLO notice that a black male robbed a sandwich shop.  *Id.* at 212.  About three-quarters of a mile from the robbery location, the officer saw a white vehicle driving on a street leading away from the location of the crime scene.  The Second District Court of Appeal in London

declined to rule on whether the stop was invalid, but reversed the denial of

the motion to suppress because the BOLO did not provide probable cause

for the defendant's arrest. *Id.* at 213. The court in London noted that the

BOLO was not supported by any "factual data" and there was no evidence

linking the suspects to the robbery. *Id.*

The post-conviction court considered the London decision in the

present case, but denied Petitioner's claim of ineffective assistance of

counsel, stating in pertinent part:

> In London, the driver and the passenger were removed at gun
> point from the vehicle, handcuffed, placed in patrol cars, taken
> to the police station, fingerprinted, photographed and
> interviewed. The court said it was clear that by the time the
> Defendant was placed in the patrol car he was under arrest.
> The court pointed to no other information to justify the arrest
> other than a generalized BOLO.
>
> In contrast, in this case, law enforcement had
> particularized articulable facts which justified not only the stop
> of the vehicle, but the brief detention necessary to identify the
> occupants and to obtain an explanation of their presence.
> Here, law enforcement had information of an attempted home
> invasion at a location that was rather remote and rural with very
> little vehicular traffic, especially at night—which is when the
> crime occurred. The residential neighborhood where the crime
> was committed is surrounded by plantations or natural forest
> and there is only one roadway out of the neighborhood from the
> house where the crime occurred. Although there was no
> description by the victim of a vehicle, leaving the area on foot
> would have been unrealistic requiring a perpetrator to walk or
> run for several miles in heavily wooded areas. Law
> enforcement responded to the scene within a matter of minutes
> and saw no other vehicle leaving the area than the one
> stopped.

It was reasonable for law enforcement to stop the vehicle and to briefly detain the occupants to determine if they lived in the area, if they were visiting someone, perhaps saw something that might help the investigation, or were actually involved in the crime. After the vehicle was stopped, partly because the driver did not roll down his window, the officer directed each of the occupants to exit the vehicle. The occupants were secured and asked for identification. During this process, the officers on the scene observed a black ski mask or a mask with holes in it for eyes inside the vehicle. They also found a firearm under the passenger seat and observed that all three of the occupants were sweating profusely. When asked why they were in the area, the Defendant first explained that they were dropping off a friend, but was unable to give an address for the friend. Then he said they had been looking for a place to play basketball, which, based on the officer's knowledge of the area, made no sense as there were no gyms or outdoor public courts in the neighborhood.

Thus, unlike the officers in London, the officers here, after the stop of the vehicle, acquired additional information and evidence that justified the detention of the individuals and their subsequent arrest. Thus, there was no factual or legal basis for trial counsel to make this additional argument, and even if he had, it is not at all likely that the result would have been any different.

Ex. S at 23-25.[11]  On appeal, denial of relief on this post-conviction claim

was affirmed without explanation.  *See* Ex. T; Ex. W.

Under Strickland, unless both prongs of the test for ineffective

assistance of counsel are proven, the claim must fail.  The post-conviction

---

[11] Petitioner filed a notice of supplemental authority in this court citing Croissy v. State, 184 So. 3d 570 (Fla. 4th DCA 2016), in which the court reversed a denial of a motion to suppress based on an illegal arrest of the defendant.  ECF No. 7.  For similar reasons that the specific facts of this case are distinguishable from those in London, the facts in this case are distinguishable from those in Croissy.

court determined that Petitioner failed to demonstrate trial counsel was deficient and, further, that no prejudice had been shown.  The court also concluded that even if trial counsel had supported the motion to suppress with an argument that the arrest was illegal, there is no likelihood that a different result would have occurred.

The state appellate court affirmed without explanation.  The Supreme Court has explained that the federal court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  Richter, 562 U.S. at 102. Under the "unreasonable application" clause of § 2252(d), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Williams v. Taylor, 529 U.S. at 362, 411 (2000) (O'Connor, J., concurring).  Rather, that application must be objectively unreasonable.  *Id.* at 409; *see also* Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); Visciotti, 537 U.S. at 27; Bell v. Cone, 535 U.S. 685, 699 (2002).  In light of the facts relied on by the post-conviction court to find that trial counsel was not deficient in failing to

move to suppress based on an alleged illegal arrest, the denial of the claim

and the affirmance on appeal have not been shown to be objectively

unreasonable.  Further, although Petitioner argues that "[a]ll evidence

obtained as a result of the illegal stop should have been suppressed," ECF

No. 2 at 28, the record does not reflect that any evidence found in his

vehicle, or his resulting statements to law enforcement, were introduced

into evidence at his trial.  He argues instead that the "confessions and

testimony of his co-defendants" given after Petitioner's illegal arrest should

have been suppressed.  ECF No. 2 at 28-32.  However, as Respondent

pointed out in the direct appeal, that claim would have required a showing

of standing on the part of Petitioner to assert the rights of his codefendants.

Even if such an argument had been made by trial counsel in an

attempt to suppress his codefendant's statements or testimony, there is no

reasonable probability that it would have been successful.  The Supreme

Court has held that suppression of the product of a Fourth Amendment

violation can only be argued by one whose rights were violated, not by

those "aggrieved solely by introduction of damaging evidence." Alderman

v. United States, 394 U.S. 165, 171-72 (1969).  "Coconspirators and

codefendants have been accorded no special standing." *Id.*  Thus,

Petitioner has not shown a reasonable probability that but for counsel's

alleged error in not challenging the legality of the arrest, the motion to suppress would have been successful and Petitioner would have had a different outcome at trial—a reasonable probability being one sufficient to undermine confidence in the outcome.  Strickland, 466 U.S. at 694.

As discussed earlier, the adjudications of the state courts on this claim are entitled to a high degree of deference in this proceeding. "Because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123.  A "doubly deferential judicial review [ ] applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  Id.  Petitioner has failed to demonstrate under § 2254 that the adjudication of the state courts is contrary to, or an unreasonable application of, Strickland or any other clearly established federal law as determined by the Supreme Court or that it is an unreasonable determination of the facts in light of the state court record. Accordingly, habeas relief on this ineffective assistance of counsel claim should be denied.

## B.  Trial court striking and, alternatively, denying motion to suppress

In the second part of Petitioner's claim, he first contends that the trial court erred by striking his motion to suppress evidence and statements

obtained as a result of the August 2008 stop of his vehicle.[12]  ECF No. 1 at

5; ECF No. 2 at 21.  He raised this same claim in his direct appeal from his

convictions and sentences.  Ex. I.  The appellate court found no error in the

trial court's actions in regard to the motion to suppress.  Ex. L.  Petitioner

contends that collateral estoppel is not properly applied against a criminal

defendant, that collateral estoppel did not apply under the procedural

posture of the prior ruling, and that the trial judge's reliance on the denial of

an identical motion to suppress in the earlier case was error resulting in a

Fourth Amendment violation.  ECF No. 1 at 5; ECF No. 2 at 27.

Collateral estoppel " 'means simply that, when an issue of ultimate

fact has once been determined by a valid and final judgment, that issue

cannot again be litigated between the same parties in any future lawsuit.' "

Schiro v. Farley, 510 U.S. 222, 232 (1994) (quoting Ashe v. Swenson, 397

U.S. 436, 443 (1970)).  Petitioner contends that the ruling on the earlier

motion to suppress could not supply the basis for collateral estoppel

because that ruling was not a determination of ultimate fact regarding an

---

[12] In regard to this aspect of Petitioner's claim, he states his claim in his petition as one of error in denial of the motion to suppress because of an illegal arrest, but in his memorandum in which he explains his claim, he contends the trial court erred in denying his motion to suppress because of an illegal stop.  *See* ECF No. 2 at 26-33.

essential element of the crimes charged, and was only a pretrial ruling, not a valid final determination.  ECF No. 2 at 25-26.

Regardless of whether the earlier ruling on an identical motion to suppress between the same parties qualifies as a ruling entitled to collateral estoppel, Petitioner cannot demonstrate error because the trial court in the instant proceeding also stated that, based on the facts before the court, the motion would have been denied on the merits.  The trial judge stated: "[H]aving had an opportunity to review the entire record of that proceeding and the stipulated facts, had I not granted the motion to strike, had it not been previously litigated before Judge Sauls, I would have denied the motion to suppress."  Ex. G-1 at 233.  Based on that statement, Petitioner also contends that to the extent the trial judge in this case denied his motion to suppress, the denial was error under the totality of the circumstances.  ECF No. 2 at 21, 30.  The issue of whether the trial court correctly denied the motion to suppress was raised in Petitioner's direct appeal.  Ex. I at 33.  The state appellate court affirmed.  Ex. L.

Respondent contends the claim is not cognizable in this proceeding because the United States Supreme Court has expressly determined that Fourth Amendment claims are not cognizable in a federal habeas proceeding where a state has provided the process by which a defendant

can obtain a full and fair litigation of the Fourth Amendment Claim.  ECF
No. 18 at 17-18.

The Fourth Amendment guarantees the right to be free from
unreasonable searches and seizures.  U.S. Const. amend. IV.  "A traffic
stop for a suspected violation of law is a 'seizure' of the occupants of the
vehicle and therefore must be conducted in accordance with the Fourth
Amendment."  Heien v. North Carolina, 135 S. Ct. 530, 536 (2014).  "[T]o
justify this type of seizure, officers need only 'reasonable suspicion'—that
is, 'a particularized and objective basis for suspecting the particular person
stopped' of breaking the law."  *Id.*  The "ultimate touchstone of the Fourth
Amendment is 'reasonableness.' "  *Id.* (quoting Riley v. California, 134
S. Ct. 2473, 2482 (2014)).

To address situations where the constitutional requirements for such
a seizure without a warrant are violated, the Supreme Court has crafted the
exclusionary rule as "a judicially created means of effectuating the rights
secured by the Fourth Amendment."  Stone v. Powell, 428 U.S. 465, 483
(1976).  The focus of the exclusionary rule is remedial—"preserving the
integrity of the judicial process"—but the "force of this justification becomes
minimal where federal habeas corpus relief is sought by a prisoner who
previously has been afforded the opportunity for full and fair consideration

of his search-and-seizure claim at trial and on direct review." *Id.* at 485-86.

The exclusionary rule "is not a personal constitutional right" and is "not

calculated to redress the injury of the privacy of the victim of the search or

seizure" but to deter unlawful conduct by police. *Id.* The Supreme Court

held in Stone that these purposes are not served by allowing federal

collateral review of Fourth Amendment claims "where the State has

provided an opportunity for full and fair litigation of a Fourth Amendment

claim." *Id.* at 494. " '[F]ull and fair consideration' in the context of the

Fourth Amendment includes 'at least one evidentiary hearing in a trial court

and the availability of meaningful appellate review when there are facts in

dispute, and full consideration by an appellate court when the facts are not

in dispute.' " Lawhorn v. Allen, 519 F.3d 1272, 1287 (11th Cir. 2008)

(quoting Bradley v. Nagle, 212 F.3d 559, 565 (11th Cir. 2000) (quoting

Caver v. State of Ala., 577 F.2d 1188, 1191 (5th Cir. 1978))).

 An evidentiary hearing and appellate review was provided Petitioner

both in this case and in an identical motion to suppress filed in an earlier

case involving the same facts and the same parties. Ex. A at 133. The trial

judge in the present case reviewed the entire transcript from that earlier

evidentiary hearing, as well as the stipulation of facts submitted by the

parties in this case, and concluded that the motion to suppress, if not

stricken, would have been denied on that record.  The appellate court in this instant case was provided full briefing on all the grounds urged by Petitioner and denied the claims of error.  Ex. L.  Under <u>Stone</u>, the claim falls into the category of Fourth Amendment claims that are generally not cognizable in federal habeas proceedings.  Moreover, based on the facts in the record, even if the claim is cognizable in this proceeding, Petitioner has not shown that the ruling of the trial court and affirmance by the appellate were contrary to, or an unreasonable application of clearly established federal law as determined by the Supreme Court or that the rulings were erroneous or unreasonable.

For all these reasons, Petitioner has failed to demonstrate that he is entitled to habeas corpus relief under 28 U.S.C. 2254.  Accordingly, relief should be denied on his claim.

## Conclusion

Based on the foregoing, Petitioner Anthony Q. Keel is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No.1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

**Recommendation**

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

§ 2254 petition (ECF No.1).  It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.  The Clerk shall substitute Julie L. Jones, Secretary of the Florida

Department of Corrections, as the sole respondent in this case.

**IN CHAMBERS** at Tallahassee, Florida, on July 19, 2017.

s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this
Report and Recommendation, a party may serve and file specific
written objections to these proposed findings and recommendations.
Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon
all other parties.  A party may respond to another party's objections
within fourteen (14) days after being served with a copy thereof.  Fed.
R. Civ. P. 72(b)(2).  Any different deadline that may appear on the
electronic docket is for the Court's internal use only and does not
control.  If a party fails to object to the magistrate judge's findings or
recommendations as to any particular claim or issue contained in a
Report and Recommendation, that party waives the right to challenge
on appeal the district court's order based on the unobjected-to factual
and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**